little, if any, amplification of facts, to vacate the judgment and open the default, which were considered and held by Mr. Justice White as not affording sufficient grounds to postpone the trial of the action, and which led to the default taken. The granting of this motion would be, in substance and effect, a reversal of the decision made at the Trial Term. This is not permissible. Warth v. Moore Co., 125 App. Div. 211, 109 N. Y. Supp. 116; Sutter v. City, 106 App. Div. 129, 94 N. Y. Supp. 515. Whether the case was under the operation of the stay at the time the default was taken presents a question of law, and can only be reviewed on appeal, or by application for a reargument before the judge who made the decision.

The remaining grounds of the motion were addressed to the discretion of the court, and, it having exercised the same adverse to the plaintiff, should only be reviewed by the judge who rendered the decision or by the Appellate Court. Any other course would lead to endless confusion and disrespect to the judges and the courts. The orderly practice seems to require that a formal order be entered denying the application of the plaintiff, made to the Trial Term, with proper recitals, an appeal be taken, and thereby secure a review in the Appellate Court of the decision of the Trial Court.

I have not considered the merits of this motion under section 724 of the Code, as construed and applied in the cases, such as Prager v. Beardsley, 133 App. Div. 592, 118 N. Y. Supp. 232. Clearly the plaintiff should have his day in court, unless he has forfeited that right by the conduct of counsel. I have not considered or passed upon that question.

Motion denied, with $10 costs.

---

### CATSKILL NAT. BANK v. DUMARY.

(Supreme Court, Appellate Division, Third Department. January 4, 1911.)

GUARANTY (§§ 32, 36*)—COMPROMISE AND SETTLEMENT (§ 17*)—SCOPE—WHO MAY ENFORCE—RELEASE.

A brick company agreed to supply a contracting company with brick, it being further agreed that, "if the brick company so desires, the contracting company will give its notes at ninety days from date of shipments, without interest." Attached to the contract, signed by defendant, was a guaranty of full performance by the contracting company "of all the obligations of the foregoing contract." A note given by the contracting company pursuant to the contract, and discounted by the brick company with plaintiff bank, was not paid at maturity, and was duly protested. Judgment was recovered thereon by the bank against the contracting company, and execution returned nulla bona. Subsequently the brick company which had become insolvent, transferred to S. all its right in the contract, and thereafter S. sued defendant upon his guaranty without joining plaintiff bank as a party. This action was compromised and a release executed by S. and the brick company to the contracting company and defendant, covering all claims and damages arising out of said contract; all the parties to the release knowing of the unpaid note in the possession of plaintiff bank. *Held*, that the note was covered by the guaranty, and that plaintiff was subrogated to the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rights of the brick company as against the guarantor, and that the release was voidable so far as the rights of plaintiff were concerned.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 35-45; Dec. Dig. §§ 32, 36;* Compromise and Settlement, Cent. Dig. §§ 66-74; Dec. Dig. § 17.*]

Appeal from Trial Term, Greene County.

Action by the Catskill National Bank against Thomas Henry Dumary. Judgment for plaintiff, and defendant appeals. Affirmed.

On or about January 15, 1901, a contract was executed by and between the Eastern Paving Brick Company, party of the first part, and the Albany Contracting Company, party of the second part, by which the brick company undertook to supply brick to the contracting company upon certain terms. The contract provided among other things as follows: "If the party of the first part so desires, the party of the second part will give to the party of the first part its note at ninety days from date of shipments, without interest." Immediately thereafter, and separated therefrom by a comma only, the following words appeared in the printed contract form used: "With the same individual security which guarantees this contract." These words were crossed out by typewriter, apparently at the time when the printed contract form was filled out, and the contract finally executed by the parties. Attached to the contract and signed by defendant herein was a printed clause of guaranty as follows: "For value received, I hereby guarantee the full performance by the Albany Contracting Co. of all the obligations of the foregoing contract." A 90-day note for $2,000 for materials furnished was given by the contracting company August 3, 1901, pursuant to the contract, and on the same day discounted by the brick company with the plaintiff bank. At maturity the note was unpaid, and a 90 days renewal note, also pursuant to the contract, was executed by the contracting company and discounted with the bank, and the old note taken up. This renewal note was not paid at maturity, of which the defendant herein had knowledge on or before April 12, 1902, and was duly protested. Suit was brought thereon by the bank against the contracting company on April 24, 1902, and a judgment recovered for the full amount thereof, upon which execution was returned nulla bona. The brick company was also insolvent prior to May 9, 1902, and prior to June 28, 1904, transferred to one Stafford all its rights in the said contract. Subsequent to said June 28, 1904, an action was brought by said Stafford as plaintiff against said Dumary as defendant upon his said guaranty; the bank not being a party thereto. This action was settled and compromised by a payment of $2,500 and a release was duly executed by said Stafford and the brick company to the contracting company and said Dumary on October 29, 1906, covering all claims and demands arising out of said contract. It does not appear that the bank knew of said guaranty at the time of the discount of said notes nor just when it acquired such information, but the present action was brought by the bank June 13, 1907, against said Dumary upon his said guaranty.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Rosendale & Hessburg, for appellant.
Hun & Parker, for respondent.

SMITH, P. J. The guaranty in question is in form general and not special, and without more would attach to and cover the notes given as "obligations of the foregoing contract." But the striking out of the words in the printed contract form regarding the individual security upon the notes to be given seems to limit the scope of the

guaranty annexed to the contract, and to show that the guarantor did not intend to attach his name to any notes given pursuant to the contract, which would make him absolutely liable to a transferee for value. His guaranty was to the brick company of all liability, including notes given pursuant to the contract.

The claim of the plaintiff bank herein is that, as a creditor of the brick company upon its indorsement of the renewal note made by the contracting company, it is entitled upon showing the insolvency of the brick company to be subrogated to this company's original right to hold liable this guarantor. The brick company so long as it held the renewal note had a potential right of action against the guarantor which would become an actual right in case collection could not be enforced by it, and the bank as purchaser of the note now seeks to succeed to all the equities of the brick company as against this guarantor. It has been held that the right of subrogation "is a remedy which equity seizes upon to accomplish what is just and fair between the parties" (Morehouse v. Brooklyn Heights R. R. Co., 185 N. Y. 520, 525, 78 N. E. 179, 180), and that this remedy is available to the indorsee or transferee of a bill or note (27 Enc. of Law, p. 232). If now this guarantor in this action be forced to pay the amount of this note issued by the contracting company, and by it never paid, he is doing no more than he undertook to do by the terms of his guaranty, or than the payee of the note if it had not been transferred could have compelled him to do by suit either on the note, or, waiving the note, directly upon the contract pursuant to which the note was given. Nor is he in this action deprived of the benefit of any possible defenses or counterclaims he might have as would be the case if he had guaranteed generally the note and were then sued at law by an indorsee for value thereof. The guarantor has contracted with the brick company that the contracting company should perform its part of the contract in respect to payments for materials bought. The contracting company has admittedly failed to pay a note given on account of such materials purchased, and we see no reason in equity why the bank which purchased this note before maturity should not be allowed in view of the insolvency of the brick company to enforce this guaranty by suit, the same as the payee of the note might have done had the note not been transferred.

The principal affirmative defense pleaded and raised upon the trial was the release of the brick company to the contracting company and this surety, executed on or about October 29, 1906. At that time the right of the bank to insist upon its right of subrogation as against this surety had accrued. The surety and both companies knew of the unpaid note in the possession of the bank, and consequently any release or settlement effected between themselves which ignored the rights of the bank must be held voidable in equity at the instance of the party whose rights were thus disregarded.

Judgment affirmed, with costs.

Judgment and order unanimously affirmed, with costs. All concur.